## The West Branch and Susquehanna Canal Co. *versus* Mulliner.

1. A state canal being sold, the purchaser took it *cum onere* subject to the duties upon the state.

2. The state is not liable for consequential damages, the constitutional limitation applies only to a *taking*.

3. If no provision be made for consequential damages in an act transferring a state canal, the purchaser is not liable for them.

4. For wantonness or negligence a company purchasing state canals may be answerable, but not for the result of repairs made bonâ fide, with a view to maintain the efficiency of the canal.

January 26th 1871. Before THOMPSON, C. J., READ, AGNEW and WILLIAMS, JJ. SHARSWOOD, J., at Nisi Prius.

Error to the Court of Common Pleas of *Snyder county* : No. 136, to July Term 1870.

On the 1st of November 1865, Daniel Mulliner brought an action on the case against The West Branch and Susquehanna Canal Company, and averred in his declaration that the defendants raised the water in their canal higher than it was when they became the owners of it, and that by reason thereof it was forced into the plaintiffs' cellar, injuring it, the wall of his house, &c. The canal was built by the Commonwealth and sold by virtue of an Act of Assembly to the Sunbury and Erie Railroad Company. The defendants were incorporated April 21st 1858, and became the owners of the canal.

The cause was tried December 15th 1869, before Woods, P. J.

The plaintiff gave evidence that the canal had been raised every year, and that in 1865 especially, the water came into his house and did him much injury; that in 1865 there was a great freshet, the water then being higher than it had ever been before. There was much other evidence by the plaintiff as to the raising of the water and the injury to his property.

The defendants gave evidence in answer to the plaintiffs' case.

The defendants' points and their answers were as follows :—

1. Even if the water was raised in the canal, in 1865, the Commonwealth or its alienee had a perfect right to do so, especially if it was necessary to keep up the navigation so as to accommodate the boating business.

[West Branch and Susquehanna Canal Co. *v.* Mulliner.]

Answer: "This point we answer as requested."

2. This action of trespass upon the case cannot be maintained, and therefore plaintiff is not entitled to recover.

Answer: "This we refuse to answer as requested."

3. If the plaintiff purchased with a full knowledge that the water ran from the canal into his cellar, and other parts of his house, this action cannot be sustained.

Answer: "If the water had been at the same stage in 1865, as it was when Mr. Mulliner purchased, this would be so, and we would answer it as requested."

The court after referring to the character of the suit and the facts charged: * * * ["You will ascertain whether the defendants did raise the water any in the year 1865, and if so, what damages did the plaintiff sustain by reason thereof."] The defendants deny that the water was raised as alleged and charged by the plaintiff, and contend that even if they did the plaintiff cannot recover in this action. That the plaintiff has mistaken his remedy. That an action at common law cannot be sustained in such a case as this against this corporation." * * * "This canal company is formed by virtue of the Act of April 21st 1858, above referred to. This act does not point out how any person is to proceed to ascertain any damage inflicted on him by this company. It does not say that any damage sustained by an individual shall be ascertained in the manner it was done when owned by the Commonwealth, nor does it point out any other remedy. By the 7th section it is provided that the company shall pay any damage sustained in relation to the location, construction, repair, management or use of any of the canals sold by that act, 'the amount to be ascertained and payment made as the legislature may direct.' The legislature has not, that we know of, pointed out how these damages are to be ascertained, and until they do, the common-law remedy remains to those who are injured.

["We therefore instruct you that this action can be sustained if the defendants raised the water in their canal higher than it had been before 1864 or 1865, and thereby injured the property of the plaintiff. If you shall so find, then the plaintiff would be entitled to recover whatever damages he may have sustained from the time of the purchase of this property by him up to the date of the commencement of this suit.] You cannot include any damage the property may have sustained before the plaintiff became the owner of it, or any that it may have sustained since this action was commenced."

The verdict was for the plaintiff for $300.

The defendants sued out a writ of error and assigned, amongst others, the following errors:—

3 and 4. The answers to the defendants 2d and 3d points.

5 and 6. The parts of the charge in brackets.

*D. B. Miller* and *G. F. Miller*, for plaintiffs in error.—The act for constructing this canal as a state work, approved April 9th 1827, by the 8th section provides "that if any person shall consider himself aggrieved by reason of the canal passing through the lands of which he is owner, or by interfering in any manner with his rights of property, he may, at the completion of the work, thereupon or within one year thereafter, petition the Court of Quarter Sessions of the proper county, &c., who shall appoint five reputable citizens, &c., whose duty it shall be, &c., to report such damage as they or any three of them shall think the owner has sustained by reason of said canal," &c. By the 6th section of the Act of April 2d 1830, the governor was authorized to appoint three individuals as a board of appraisers to assess damages done to private property. The act for the sale of the state canals, approved April 21st 1858, § 4, provides "that, on securing the purchase-money, the governor shall transfer to the Sunbury and Erie Railroad Company all the said works with the appertenances." The 5th section provides that "the said Sunbury and Erie Railroad Company shall have authority to sell and convey, &c., said property to any corporation, &c.; * * * and the Sunbury and Erie Railroad Company, or their assigns, immediately after taking possession of the said canals, shall be bound to keep up the same, as heretofore done by the canal commissioners, in as good repair and operating condition as they now are, and they shall be and remain public highways for ever," &c. The 7th section provides "that any and all claims for damages or other demands against the Commonwealth by individuals or companies in relation to location, construction, repair, management or use of any of the divisions of canal sold under provisions of this act shall, if established, be paid by the purchaser of the proper line of division, the amount to be ascertained and payment thereof made as the legislature may direct." They cited, also, Commonwealth *v.* Reed, 10 Casey 275; Commonwealth *v.* Fisher, 1 Penna. R. 462; Zimmerman *v.* Union Canal Co., 1 W. & S. 346; McKeen *v.* Del. Div. Canal Co., 13 Wright 438; Schuylkill Navigation Co. *v.* McDonough, 9 Casey 77; Craig *v.* Allegheny, 3 P. F. Smith 477; Western Penna. Railroad Co. *v.* Johnston, 9 Id. 293; Monongahela Navigation Co. *v.* Coons, 6 W. & S. 101; Susquehanna Canal Co. *v.* Wright, 9 Id. 9; Philadelphia and Trenton Railroad Co., 6 Whart. 25; Henry *v.* Pittsburg and Allegheny Bridge Co., 8 W. & S. 85; Monongahela Navigation Co. *v.* Coon, 6 Barr 379; Mifflin *v.* Railroad Co., 4 Harris 182; New York and Erie Railroad Co. *v.* Young, 9 Casey 175; Watson *v.* P. and C. Railroad Co., 1 Wright 469; McKinney *v.* Monongahela Navigation Co., 2 Harris 65; Reitenbaugh *v.* Chester Valley Railroad Co., 9 Id. 100.

[West Branch and Susquehanna Canal Co. *v.* Mulliner.]

*J. C. Bucher* and *A. C. Simpson*, for defendant in error.

The opinion of the court was delivered, March 30th 1871, by

THOMPSON, C. J.—This was an action brought by the plaintiff below against the canal company to recover damages for an injury done by raising the water of the canal, so that plaintiff's house was flooded, and thereby damaged and injured. The damage done, it will be conceded, was a consequential one. It comes within a class of cases of damage to be found in our reports, such as The Monongahela Navigation Co. *v.* Coons, 6 W. & S. 101. The canal originally belonged to the state, and the company took it *cum onere*, subject to the duties upon the state, and the first question which presents itself is, would the state have been liable for consequential damages if she held it? In the case above referred to, Chief Justice Gibson shows very clearly that the state would not be liable for damages of a consequential character, because the constitutional limitation applies only to an actual *taking* of property, and the word "*taking*" was to be construed in its natural significance. It is said in that case: "If, then, the state would not be bound for the damage done to the plaintiff's mill, had she been the immediate cause of it, how is the defendant bound? The company acted by her authority, as well as for the public benefit;" and the cases of a public ferry being destroyed by a canal, and a valuable spring being drowned out, and no recovery had therefor, are mentioned in the case. The state not being liable, would a company, its vendee, be liable? The answer to this is to be found in the act transferring the canal to individuals. If no provision is made for consequential damages in this act, the plaintiff below was not entitled to recover. It is said in Young *v.* The New York and Erie Railroad Co., 9 Casey 181, "in the cases cited, the doctrine has been distinctly held, and it is the settled law of the land, if anything can be settled, that unless the act of incorporation provides for it, consequential damages are not recoverable from a railroad or other improvement company, in constructing or maintaining their works." The cases referred to in the opinion are: Monongahela Navigation Co. *v.* Coons, 6 W. & S. 101; Susquehanna Canal Co. *v.* Wright, 9 Id. 9; McKinney *v.* Monongahela Nav. Co., 2 Harris 65; Shrunk *v.* Schuylkill Navigation Co., 14 S. & R. 71; The Trenton Railroad, 6 Whart. 45; Rundle *v.* Delaware and Raritan Canal Co., 14 How. 80. The act authorizing the sale of the canals, provides in the 7th section, "that any and all claims for damages, or other demands against the *Commonwealth* by individuals and companies, in relation to the location, construction, repair, management or use of any canal, shall be paid by the purchaser." It is clear that the legislature did not intend that this section should cover cases of consequential damages, because it expressly uses the

[West Branch and Susquehanna Canal Co. *v.* Mulliner.]

words " claims or demands against the Commonwealth." These claims or demands were a burthen on the canals, and the vendee was to take them subject to such burthens.   The section could not relate to the future, as the Commonwealth ceased to be the owner, and therefore no demands could arise against it by reason of the operation of the canals.   The 5th section provides that canals shall remain public highways, and the purchasers shall keep them in as *good repair and operating condition* as the canal commissioners had done, and subject to any existing contracts in regard to the same.   By this act the canals were sold to the Sunbury and Erie Railroad Company, and subsequently, that company sold to the defendants below.   Their powers and liabilities are made the same as those of the railroad company, their vendors.   The same Act of Assembly incorporates the defendants, and we look in vain through it for any provision that either was liable for damages solely of a consequential nature, in repairing or maintaining the canal.   As already said, such damages result alone from legislative authority, and if that do not exist, there is no remedy for them, in cases of public improvements authorized by the state.   If a suit as for a nuisance, as this is, were allowable, the consequence would be, that the canal would have to be abated to its original height, otherwise the plaintiff might institute suit every day, while the effect would continue and, others doing the same thing, the canal might be destroyed ; at least it might entirely prevent what the law requires the company to do, namely : " to keep up the navigation of the canal as a public highway, in as good repair and operating condition as the canal commissioners had done."   For negligence or wantonness the company may be made answerable, in an action on the case, but may not for the result of repairs bonâ fide made, with a view to maintain the efficiency of the canal.   In deciding the opposite of this, the court below erred.  There was *no pretence that the company negligently, or wilfully, with intent to injure any person, raised the water in their canal.*   The ruling on the points covers the main question of the case, and is to be found in the answer of the court embraced in the 3d, 4th, 5th and 6th assignments of errors, whereon the ground of recovery is made to rest alone upon a fact, viz., whether the canal was raised higher than it was in 1865.   We need not notice any other assignments of error in the case ; but for this ruling,

The judgment is reversed.